UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF NEW YORK

MARILYN SMITH,

                          Plaintiff,                  **CIVIL COMPLAINT**

                  -against-                **Civil Case No.:** 8:17-cv-1196 (BKS/DJS)

CENTER FOR OCCUPATIONAL HEALTH
AND WELLNESS (COHW) AT THE
CHAMPLAIN VALLEY PHYSICIANS' HOSPITAL (CVPH)
                          Defendants.

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

1. Plaintiff, Marilyn Smith, brings this action under the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117 and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. for employment discrimination based on a Disability. The Plaintiff alleges that Defendant Champlain Valley Physician's Hospital and the Center for Occupational Health and Wellness through its employees and agents did discriminate against her based on a Disability by failing to provide her a reasonable accommodation, and by creating a hostile work environment. The Plaintiff also asserts that the Defendants retaliated against her for seeking an accommodation. The Plaintiff is now seeking compensatory damages, punitive damages, costs and attorney's fees for the Defendants wrongful conduct.

**JURISDICTION**

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff's claims are brought under the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117. Supplemental jurisdiction exists under the New York Human Rights Law, Executive Law §§292 and 296 et seq.

## VENUE

3. This action properly lies in the Northern District of New York, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

4. On August 3, 2017 and August 10, the EEOC issued "right to sue" letters, authorizing plaintiff to commence an action against Defendants within 90 days from receipt of the same. Copies (2) of the right to sue letters are annexed hereto as Exhibit A.

5. This action has commenced within 90 days of plaintiff's receipt of the right to sue letter.

## PARTIES

6. Plaintiff, Marilyn Smith, is a citizen and resident of the United States, State of New York, Clinton County residing in the City of Plattsburgh.

7. Defendant, Center for Occupational Health and Wellness (herein after "COHW or Defendant is used interchangeably") is a The University of Vermont Health Network and Defendant Champlain Valley Physicians Hospital (CVPH) is part of a six-hospital network serving patients and their families in northern New York.

## FACTS

8. The plaintiff was hired on or about November 2007 by Defendant COHW as a Crisis Clinician.

**Plaintiffs Disability**

9. Sometime in 2012 the Plaintiff was diagnosed with Acoustic Neuroma, a non-cancerous fibrous tumor located deep inside the skull and adjacent to vital brain centers in the brainstem. As these tumors grow, they affect surrounding structures in the brain that control vital functions. The most common symptoms are hearing loss, tinnitus, balance problems, unsteadiness, dizziness and facial numbness.

10. In January 2013, the Plaintiff travelled to the renowned House Ear Clinic in Los Angeles to undergo middle Fossa Surgery to remove the tumor.

11. As a result of the tumor and the surgery to remove the tumor, Plaintiff has a brain injury with cognitive and physical symptoms and deficits, total left side hearing loss, loss due to the severing of her left side balance nerve, headaches and facial pain due to trigeminal neuralgia.

12. On information and belief, the disabilities identified above in paragraph 9 and 11, are disabilities defined by the Americans with Disabilities Act (ADA) and New York State Human Rights Law (NYHRL).

**Plaintiff was Otherwise Qualified for the Job**

13. For about a year prior to being diagnosed with the disabling condition (paragraph 9 and 11), Plaintiff worked without accommodations and was able to fulfill all the requirements of her position.

14. However, starting in around May 2014 despite her best efforts, due to her disability Plaintiff without the aid of a reasonable accommodation was unable to perform her duties as she had prior to her surgery. The plaintiffs disability affected her work for example in the following ways: she could not work at the same pace, and it took tremendous effort and time to produce quality written work.

15. As a result of her disability, she encountered workplace difficulties from the day she returned to work. She felt scrutinized and bombarded with criticism from ECC Management.

16. As time went on, Plaintiff noticed that her difficulties intensified and was getting worse and she realized this was more than a recovery issue. She sought help from her doctor, and was referred to a physiatrist; Dr. Kelly Heath. Dr. Heath explained that her ability to work and manage stressors had changed as a result of my surgery. She recommended an intensive episode of outpatient treatment with PT, OT, Speech, and Neuro Psychology. Plaintiff recognized that working for over a year without accommodations took a tremendous toll on her overall health and wellness. Plaintiff started working with Stacy Crouse of The Center for Occupational Health and Wellness and informed her that she will need reasonable accommodations upon my return to work.

17. On May 12. 2014 Plaintiff started FMLA and treatment at Penn Medicine in Philadelphia.

**Request For An Accommodation**

18. On and around July 9. 2014 in correspondence with Stacy Crouse at COHW it was established that CVPH only required a letter from her Doctor to satisfy her request for Accommodations.

19. On August 11, 2014, Plaintiff returned to CVPH with a note from her physician allowing her to return to work and full duty. However, CVPH would not allow Plaintiff to return to work until a request for reasonable accommodations was submitted and approved. This is contrary to what she was told prior by the employer.

20. On August 13. 2014 Plaintiff forwarded a letter to CVPH from her physician requesting three (3) accommodations. Stacy Crouse advised Plaintiff that her supervisor, Kenneth Thayer, is on vacation and she needs to contact him on Monday, August 18,2014. Plaintiff e-mailed Kenneth Thayer the letter from her physician.

21. On Monday August 18, 2014, Plaintiff called Kenneth Thayer who told her he did not receive the email. However, Plaintiff has a read-receipt which indicated Thayer opened the email at 8:03pm on August 15, 2014.  During the phone call, Plaintiff is told to call Gregory Freeman Supervisor, for COHW.

**Accommodation Request Denied**

22. On August 19, 2014, Plaintiff called Gregory Freeman.  Mr. Freeman told her "Ken Thayer has denied your accommodations request, so you need to get with your doctor to find out what you need to do to get back to work.  Mr. Freeman reports that he does not know why Ken Thayer denied the request but they all have been denied.  During the phone call, he continually refused to discuss the accommodations with me. He told me no one at CVPH could discuss my accommodations request.  He continued saying, "This needs to be a discussion between you and your doctor."  Prior to the end of the conversation, Plaintiff asked for the denial in writing but never received anything from CVPH.

23. In a subsequent phone call to Gregory Freedman regarding a request for a modified work schedule accommodation, Mr. Freeman said, Plaintiff needs to speak with her physician because the letter she provided is not adequate and the physician must include the rationale behind the accommodations request.  Inappropriately, Mr. Freeman goes on to say that anyone can make a request for a modified work schedule.

24. Plaintiff was denied accommodations despite that she previously provided CVPH the diagnosis for her conditions which relate directly to the accommodations requested.

25. To make matters worse, on August 20. 2014, Plaintiff learns that CVPH violated her right to keep her health information private by sharing this information with another employee, a Ms. Trudy Miller and later a Ms. Kathy McCallister.  Plaintiff was also informed by Union

Representatives that Trudy Miller publicly announced during a labor management meeting, that her request for accommodations had been denied.

26. During a meeting with VP Michelle Le Beau on August 29, 2014 Plaintiff was advised she was on personal leave. She was further informed that once denied an accommodation request, an accommodation becomes a restriction on the employee. Ms. La Beau further explained that "If your doctor writes like they did here, that you require something to do your job and we can't provide it for you then you are unable to return because your doctor is saying here that you cannot work without it. So you are on leave because of the restrictions placed upon you by your physician."

27. However, Michelle Le Beau acknowledged that she knew Plaintiff was out last year and was out again this year, and knew she had a qualifying medical condition. However, Ms. Le Beau went on to say, "that is not the issue."

28. Michelle Le Beau informed Plaintiff that in the past, employees have reinjured themselves and only after speaking with the employees' doctor after the employees have reinjured themselves, does CVPH discover what the employee has asked for CVPH to provide as an accommodation is not what their doctor intended at all.

29. On September 11. 2014, Plaintiff sent VP Michelle Le Beau a letter from Dr. Heath as per her requirement.

30. On September 22. 2014 a meeting is called by Michelle Le Beau and Gregory Freeman. In the meeting, Michelle Le Beau begins by informing Plaintiff that Plaintiff's physician contradicted herself in the Doctors letter. Ms. Le Beau states that her doctor "writes here that accommodations are not restrictions, but the beginning of the letter states you require accommodations based on your deficits and impairments. We will need more information about these other deficits she is referring to."

31. The September 11, 2014 meeting continues and Ms. Le Beau states that CVPH will not allow a modified start of the shift as a reasonable accommodation for the Plaintiff. Instead the employer proposes that the Plaintiff go out on FMLA time instead of resuming work with the adjusted work schedule as an accommodation. Ms. Le Beau strongly encouraged Plaintiff to agree to this proposal. Given no other choice, Plaintiff reluctantly agreed to use FMLA in lieu of an alternate work schedule Plaintiff which would have allowed the plaintiff to resume work immediately. CVPH allowed Plaintiff to use FMLA but would not accommodate this Plaintiff who has a qualifying disability.

32. On September 25 and 29, 2014, Plaintiff received e-mails from Michelle Le Beau that pertain to the meeting that took place on September 22, 2014. The e-mails do not respond to the request for accommodation.

33. In October 2015 and about year after being out of work on personal time in the absence of a reasonable accommodation, Plaintiff still had not received a response to her request for accommodation.

**Retaliation**

34. It was at this time that CVPH began instituting disciplinary action against the Plaintiff for alleged performance issues.

35. Sometime in August 2015, Plaintiff was suspended and threatened with termination. Plaintiff is currently out-of-work with no return date given by the employer. Nonetheless Plaintiff has continued to receive pay while on suspension since August of 2015.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(FAILURE TO ACCOMMODATE UNDER FEDERAL AND STATE LAW)**

36. The allegation in paragraphs "1" through "35" are incorporated herein as if set forth in full.

37. Plaintiff was qualified for her position and could perform the essential functions of the job with a reasonable accommodation.

38. Defendant had notice of Plaintiffs accommodation and was regarded as disabled because Plaintiff had provided Defendant several doctors note establishing her disability at a minimum the Defendant was on inquiry if not actual notice of the Plaintiffs disability.

39. On multiple occasions, Plaintiff asked for an accommodation due to her disabling condition.

40. Defendant was provided notification of Plaintiff's physical limitation, her diagnosis and several documents from her doctors in support of her condition and need for accommodation.

41. Defendant either failed to respond to requests for accommodation, avoided requests for accommodation, and placed undue difficulty upon the Plaintiff to provide additional and redundant documentation of her condition and the need for accommodation.

42. While Plaintiff has done everything required to satisfy the requests for an accommodation, Defendant has either not approved or avoided constructive communication regarding the accommodation request or denied her accommodation requests in violation of Title VII and NYHRL.

43. The Defendant never engaged in an interactive process with the Plaintiff to ascertain what if any reasonable accommodations were available for the Plaintiff given her disability and the essential functions of the job.

44. Failure to engage in an interactive process before engaging in a tangible employment action is discriminatory termination prohibited by Title VII and NYHRL.

## AS AND FOR A SECOND CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT

45. The allegation in paragraphs "1" through "44" are incorporated herein as if set forth in full.

46. That the Defendants created a hostile work environment through their discriminatory conduct that was pervasive.

47. That Defendants created a hostile work environment by constantly scrutinizing the Plaintiff work. The scrutinization although not severe was pervasive and the employer did scrutinize other similarly situated employees outside Plaintiffs protected class.

48. Additionally, Defendants have placed undue demands on the Plaintiff despite her effort to be accommodated for her disabling condition.

49. That instead of accommodating the Plaintiff pursuant to Federal and State Law, Defendant offered that Plaintiff use her personal time for an adjusted work schedule.

50. After the Plaintiff was diagnosed with a disabling condition and underwent surgery in a direct effort to correct the condition, she returned to work.  Upon which, Management at CVPH, criticized the Plaintiff for an alleged inability to perform to their expectations, which exacerbated her condition due to the stress CVPH created for the Plaintiff.

51. Due to the stress created by CVPH Management, Plaintiff developed cognitive difficulty, emotional difficulty and physical issues for which she has received medical treatment.

## AS AND FOR A SECOND CAUSE OF ACTION
## DISPARITE TREATMENT

52. The allegation in paragraphs "45" through "51" are incorporated herein as if set forth in full.

53. The Defendant has treated the Plaintiff differently than similarly situated employees who are not disabled .

54. Plaintiff was treated differently in the following ways : 1. Her work was excessively scrutinized, her work load was increased, she was forced to use FMLA/personal time rather than be given an accommodation, other nondisabled comparators engage similar or worse conduct than the plaintiff and they were not suspended.

## AS AND FOR A SECOND CAUSE OF ACTION
## DISCRIMINATORY SUSPENSION

55. The allegation in paragraphs "45" through "54" are incorporated herein as if set forth in full.

56. The Defendant suspended the Plaintiff which is a tangible employment action.

57. This suspension was under circumstances that give rise to an inference of discrimination based upon disability in that in came after the Defendant became aware of Plaintiffs disability.

58. This suspension was under circumstances that give rise to an inference of discrimination based upon disability because the Defendant suspended the Plaintiff for reasons that it did not terminate other similarly situated employees outside her protected class for.

The defendant had no legitimate nondiscriminatory reason for Plaintiffs Termination.

## AS AND FOR A SECOND CAUSE OF ACTION
## RETALIATION

59. The allegation in paragraphs "55" through "58" are incorporated herein as if set forth in full.

60. That the Plaintiff engaged in protected activity when: she sought an accommodation from the Defendant employer, put the Defendant on notice the she had disability and when she provided medical documentation indicating she had an injury.

61. The Defendant retaliated against the Plaintiff for the above protected activity by among other things increasing her work load, refusing to provide an accommodation for her disability, and by suspending her from work with no set return date.

62. The retaliation followed shortly after the Plaintiff engaged in protected activity and this gives rise to an inference of retaliation.

63. The Employers' proffered reason for her suspension amounts to disparate treatment and such would negate any legitimate nondiscriminatory reason they employer may allegedly have for the retaliation in this case.

**WHEREFORE**, plaintiff respectfully requests that this court enter a judgment:

1. Declaring that the acts and practices complained of herein are in violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117 and 42 U.S.C. §1981a. and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. for employment discrimination based on a Disability. Title VII of the Civil Rights Act of 1964 and constitute the basis for awarding back pay with interest, compensatory damages, other lost benefits, and such other further relief as to this Court seems just and proper.

DATED:
October   27, 2017

LAW OFFICE OF
PATRICK SORSBY PLLC

By    S/
Patrick Sorsby
Bar Roll No.: 517840
Attorney for Plaintiff
1568 Central Avenue
Albany, New York 12205
Phone: (518) 545-4529
E-mail: sorsbylaw@gmail.com